# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| QUARTEZ GARY, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 2:18-cv-02756-TLP-tmp |
| ) | |
| SHELBY COUNTY GOVERNMENT, ) | JURY DEMAND |
| BILL HASLAM, AMY P. WEIRICH, ) | |
| FLOYD BONNER, and STATE OF ) | |
| TENNESSEE, ) | |
| ) | |
| Defendants. ) | |

## ORDER DISMISSING PLAINTIFFS SPATES, WEATHERSPOON, HILER, AND RICHARDS, DENYING REQUEST FOR CLASS CERTIFICATION, DISMISSING THE COMPLAINT, CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH, AND NOTIFYING PLAINTIFFS OF APPELLATE FILING FEE

Six pro se Plaintiffs—Quartez Gary, Nicco Spates, Ontario Hiler, Tyrone Richards, Delchon Weatherspoon, and Paul Pearson—sued pro se under 42 U.S.C. § 1983.[1] (ECF No. 1.) Each Plaintiff signed the complaint, but only Plaintiff Gary moved to proceed in forma pauperis. (ECF No. 2.) The Court allowed Plaintiff Gary to proceed in forma pauperis and assessed the civil filing fee under the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)–(b). (ECF No. 5.) The Court ordered the other five Plaintiffs to move to proceed in forma pauperis under 28 U.S.C. § 1915(a)(2) or to pay the full $400 civil filing fee. (ECF Nos. 4, 6–9.) In the orders, the Court warned each Plaintiff that if he failed "to comply with this order in a timely

---

[1] When they sued, Plaintiffs were pretrial detainees at the Shelby County Criminal Justice Center ("CJC") in Memphis, Tennessee.

manner, the Court [would] deny leave to proceed in forma pauperis, assess the entire $400 filing fee without regard to the installment payment procedures, and dismiss the action without further notice under Federal Rule of Civil Procedure 41(b), for failure to prosecute." (ECF Nos. 4 at PageID 96–97; 6 at PageID 102–03; 7 at PageID 105–06; 8 at PageID 108–09; 9 at PageID 111–12.)

Plaintiff Pearson complied with the Court's order (ECF No. 10), and the Court granted his motion to proceed in forma pauperis. (ECF No. 14.) The Court Clerk sent the orders to Plaintiffs Spates, Weatherspoon, Hiler, and Richards. Those mailings however were returned to the Court with notations that the CJC had released each of them. (ECF No. 11; ECF No. 12; ECF No. 13; ECF No. 23.)[2] The most basic responsibility of a litigant is to keep the Court advised of his mailing address so the Court and parties can effectively communicate. Plaintiffs Spates, Weatherspoon, Hiler, and Richards failed to notify the Court of their current location. So it appears they have abandoned this action. So in accord with the Court's prior orders, this Court **DISMISSES** Plaintiffs Spates, Weatherspoon, Hiler, and Richards as parties here.

While it is generally not practicable for multiple pro se inmates to litigate their claims in a single action, the claims here appear to be so interrelated as to warrant an exception to that general principle. Plaintiffs Gary and Pearson both allege harm arising out of the same series of transactions or occurrences. *See* Fed. R. Civ. Pro. 20(a)(1)(A). They allege, generally, that Shelby County's defective indictment and grand jury process has violated their Fourth, Fifth,

---

[2] Duplicate copies of the order sent to Plaintiffs also were returned to the Court. (ECF Nos. 16 (Spates); 17 (Hiler); 18 (Weatherspoon); 20 (Spates); 21 (Hiler); 22 (Weatherspoon).)

Sixth, and Fourteenth Amendment rights in the same manner. (ECF No. 1.) The Court then will allow this case to proceed with Quartez Gary and Paul Pearson as Plaintiffs.

The Court directs the Clerk to record the Defendants as the Shelby County Government, Tennessee Governor Bill Haslam, Shelby County District Attorney General Amy P. Weirich, Sheriff of Shelby County Floyd Bonner, and the State of Tennessee.[3] Plaintiffs sue the Defendants in their individual and official capacities. (ECF No. 1 at PageID 2.)

## BACKGROUND

Plaintiffs allege Defendants "have employed a uniform practice and procedure of indicting all pre-trial detainees who enter the 'facility,' regardless of the probable cause needed to justify their detention and subsequent trial." (*Id.* (emphasis omitted).) Plaintiffs call this the "Rubber Stamp" procedure and allege that many counties and their jails across Tennessee implement it. (*Id.* at PageID 3.) Plaintiffs also allege that "the Shelby County Grand Jury is not properly constituted" because the individuals who make up the grand jury "are agent[s] of the District Attorney Generals [sic] Office who [sic] is influenced by the D.A. General Amy P. Weirich's Presence during the voting process in returning true bill indictments."[4] (*Id.* (emphasis omitted).) And Plaintiffs allege two forepersons of the Shelby County Grand Jury are ineligible for the role because their term has expired under state law. (*Id.* at PageID 3–4.)

---

[3] Plaintiffs also seek to sue many "Doe Defendants" in the complaint. (ECF No. 1 at PageID 12.) But service of process cannot be made on an unknown or fictitious party. The filing of a complaint against a "John Doe" defendant does not toll the running of the statute of limitation against that party. *See Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996); *Bufalino v. Mich. Bell Tel. Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968).

[4] Plaintiffs refer to this procedure and the "Rubber Stamp" procedure collectively as "improprieties." (ECF No. 1 at PageID 10.)

Plaintiffs claim Defendants violated their rights—and those of other pretrial detainees—under the Fourth, Fifth, Sixth, and Fourteenth Amendment to the U.S. Constitution. They make their claims on behalf of themselves and all pretrial detainees throughout Tennessee. (*Id.* at PageID 5.) They allege that the "Rubber Stamp" procedure causes them "indignities, humiliation and embarrassment of arrest, imprisonment, oppressive pre-trial incarceration and the subsequent prosecution and trial on admission to the 'facility.'" (*Id.* at PageID 4 (emphasis omitted).)

As for their state criminal cases, Plaintiffs allege that the state courts failed to arraign them "in full accord" with state law after the indictment and that they never showed them "a copy of any 'true bill' indictment." (*Id.* at PageID 17.) Plaintiff Gary also claims that he "was never called upon to Plead to the indictment" and has remained a pretrial detainee for 40 months. (*Id.*)

Plaintiffs seek class certification under Fed. R. Civ. P. 23 to include "[a]ll Persons who have been or will be [p]laced into custody of the facility/facilities after being arrested for a variety of offenses." (*Id.* at PageID 33–34.) They assert that they and the class will require experienced "federal counsel." (*Id.* at PageID 39.) They seek several forms of relief—declaratory and injunctive relief, compensatory damages, and fees and costs. (*Id.* at PageID 60–63.)

## LEGAL STANDARDS

### I. Screening Requirements Under 28 U.S.C. § 1915A

The Court has to screen prisoner complaints and dismiss any complaint, or any portion of it, if the complaint—

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

As to step one, in assessing whether the complaint states a claim on which relief may be granted, the Court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Under those standards, the Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). The Court will not however assume conclusory allegations are true because they are not "factual" and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. And Federal Rule of Civil Procedure 8 provides guidance on this issue.

Even though Rule 8 only requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," it also requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

Courts screening cases will accord slightly more deference to pro se complaints than to those drafted by lawyers. "Pro se complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). That said, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells*

v. *Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of pro se complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))). The Court will next look at the requirements for class certification.

## II. Class Certification

The complaint seeks certification as a class action under Fed. R. Civ. P. 23. (ECF No. 1 at PageID 33–38.) To obtain class certification, Plaintiffs must satisfy Fed. R. Civ. P. 23(a), which requires that (1) the class is too many for joinder of all parties, (2) there are questions of law or fact common to all, (3) the claims and defenses of the representative parties are typical of the claims and defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. The party seeking class certification bears the burden of proof. *See Golden v. City of Columbus*, 404 F.3d 950, 965 (6th Cir. 2005) (*citing Gen. tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)).

Although Plaintiffs proffer information trying to meet the criteria of Rule 23(a), the Court finds they would not be appropriate class representatives here. With due respect, Plaintiffs—pro se prisoners with no formal legal training—are not adequate representatives for the proposed class. *See Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003) (citing *Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000)) ("Generally, pro se prisoners cannot adequately represent a class."). "Because a layperson ordinarily does not possess the legal training and expertise necessary to protect the interests of a proposed class, courts are reluctant to certify a class represented by a pro se litigant." *Sule v. Story*, No. 95-1422, 1996 WL

170156, at *1 (10th Cir. Apr. 11, 1996) (citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) (holding that pro se prisoners are not adequate representatives for a class)); *see Howard v. Dougan*, No. 99-2232, 2000 WL 876770, at *1 (6th Cir. June 23, 2000) (affirming district court's denial of class certification and appointment of Plaintiff as class representative because "he is an incarcerated pro se litigant without legal training").

Plaintiffs here have proffered no information to suggest that they would be able or appropriate representatives for the proposed class. As a result, the Court **DENIES** Plaintiffs' request for class certification. The Court will therefore assess their claims only as they pertain to them personally.

### III. Requirements to State a Claim Under 42 U.S.C. § 1983

Plaintiffs sue under 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States, and (2) that a defendant caused harm while acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). Plaintiffs must satisfy these requirements for their complaint to succeed.

### IV. Requirements to State a Claim Under 42 U.S.C. § 1981

Plaintiffs also try to bring claims under 42 U.S.C. § 1981:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). This statute "prohibits racial discrimination in the making and enforcement of private contracts." *Runyon v. McCrary*, 427 U.S. 160, 168 (1976). Plaintiffs make no

7

allegation here that the Defendants interfered with their right to make or enforce a contract because of his race. (*See* ECF No. 1.) The complaint therefore fails to state a claim under § 1981. As a result, the Court **DISMISSES** the purported claims under 42 U.S.C. § 1981.

V.      **Requirements to State a Claim Under 42 U.S.C. § 1985(2)**

In passing, Plaintiffs try to assert claims under 42 U.S.C. § 1985(2). (ECF No. 1 at PageID 4.) Subsection 1985(2) contains two separate clauses separated by a semi-colon. The first clause forbids a conspiracy to deter a party or witness in a federal court from attending or testifying in court, to punish parties or witnesses for having attended or testified in federal court, or to influence or punish federal jurors. *Id.* Plaintiffs do not allege that the Defendants committed any of the conduct banned by this first clause. (*See* ECF No. 1.)

The second clause "applies to conspiracies to obstruct the course of justice in state courts." *Bragg v. Madison*, 20 F. App'x 278, 285 (6th Cir. 2001) (citing *Kush v. Rutledge*, 460 U.S. 719, 725 (1983)). Under the second clause, Plaintiffs "must demonstrate that there was 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Id.* (quoting *Kush*, 460 U.S. at 726).

Plaintiffs here assert the Tennessee counties treat all pretrial detainees the same. They do not allege that there was any racial or class-based animus behind the Defendants' actions. (*See* ECF No. 1.) Nor do they allege that the Defendants intended to deprive them of their right to equal protection. (*Id.*) They therefore fail to state a claim under § 1985(2) and the Court **DISMISSES** these claims too.

The Court will now turn to its analysis of the remaining allegations.

**ANALYSIS**

**I.     Plaintiffs Fail to State a Claim Against the State of Tennessee**

When plaintiffs name state government officials as defendants in their official capacity, the law analyzes those claims as if the plaintiffs are suing the government itself. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). As the Supreme Court noted in *Will*, "[b]ut a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Brandon v. Holt,* 469 U.S. 464, 471 (1985). As such, it is no different from a suit against the State itself." *Id.,* citing *Kentucky v. Graham,* 473 U.S. 159, 165–166, (1985), *other citations omitted*.

By suing Defendants Haslam and Weirich[5] in their official capacities, the Court construes Plaintiffs' claims as claims against the State of Tennessee. And there are constitutional barriers for citizens wanting to sue states. The Eleventh Amendment of the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Va. Office for*

---

[5] As a District Attorney General, Defendant Weirich is an employee of the State of Tennessee, not Shelby County. *See White v. Swafford v. Gerbitz*, 860 F.2d 661, 663 n.2 (6th Cir. 1988) (noting that district attorneys general and their assistants "prosecute suits on behalf of the state, Tenn. Code Ann. § 8-7-103, and receive an annual salary payable out of the state treasury, Tenn. Code Ann. §§ 8-7-105 and 8-7-201" and are thus employees of the State of Tennessee); *see also Hembree v. Office of the Dist. Attorney Gen. for the 13th Judicial Dist. of Tenn.*, No. 2:18-cv-00097, 2019 WL 1437913, at *2 (M.D. Tenn. Apr. 1, 2019).

*Protection & Advocacy v. Stewart*, 563 U.S. 247, 253–54 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)).

Here Tennessee has not waived its sovereign immunity. *See* Tenn. Code Ann. § 20-13-102(a). What is more, a state is not a person under 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will*, 491 U.S. at 71.

That said, the Supreme Court has clarified, however, that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985); *Ex Parte Young*, 209 U.S. 123, 159–60 (1908)); *see also Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993) ("[T]he [eleventh] amendment does not preclude actions against state officials sued in their official capacity for prospective injunctive or declaratory relief." (citing *Ex Parte Young*, 209 U.S. 123)).

Along with monetary damages, Plaintiffs here seek declaratory and injunctive relief against Defendants. So Plaintiffs' official-capacity claims for injunctive relief against Defendants Haslam and Weirich are not barred by sovereign immunity. But there are other problems with these claims.

To bring their official-capacity claims for injunctive relief against Defendants Haslam and Weirich, Plaintiffs must allege that the State was responsible for the violation of their constitutional rights because of a practice, custom, or policy. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). The Sixth Circuit has held that to establish the necessary causal link

between constitutional violation and policy, a plaintiff must "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citing *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987)). The custom or policy must be "the moving force" behind the deprivation of the plaintiff's rights. *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 606–07 (6th Cir. 2007) (citing *Monell*, 436 U.S. at 694).

Plaintiffs allege that "[t]he Defendants" have instituted a policy of indicting all pretrial detainees without establishing probable cause. They contend that this practice "is in part derived from the written policies and procedures of the defendant[s], and is implemented[,] employed[,] and/or overseen by defendants at numerous jails and counties across the State of Tennessee." (ECF No. 1 at PageID 3 (emphasis omitted).)

At the outset, the Court notes that Plaintiffs have alleged no personal involvement of Governor Haslam relating to the indictment or grand jury process in Shelby County. Nor do Plaintiffs specify that the State of Tennessee itself instituted and follows this policy. They simply allege only vaguely that "the Defendants" are responsible. Those allegations are insufficiently vague to hold the State responsible for the alleged actions of its officials. *See Marcilis v. Twp. of Redford*, 693 F.3d 589, 596–97 (6th Cir. 2012) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)) (affirming district court's dismissal of complaint that "makes only categorical references to 'Defendants'" and holding that the complaint failed to "'allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right'"); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (affirming that the complaint failed to state a claim for relief because Plaintiff "failed to allege with any degree of specificity which of the named defendants were personally involved in or responsible for each

11

of the alleged violations of his federal rights"). As a result, Plaintiffs fail to state a claim against the State of Tennessee or against Defendants Haslam and Weirich in their official capacities.

## II. Plaintiffs Fail to State a Claim Against Shelby County

For the reasons noted above, Plaintiffs' claims against Defendant Bonner in his official capacity are construed as against Shelby County.[6] As with Plaintiffs' claims against the State of Tennessee, Courts may not hold a local government such as a municipality or county "liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (emphasis in original); *see also Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994).

Instead, Courts may hold a municipality responsible for a constitutional deprivation only if there is a direct causal link between a municipal policy or custom and the alleged deprivation. *Monell*, 436 U.S. at 691–92; *Deaton v. Montgomery Co., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479–80 (1986) (emphasis in original)).

As discussed above, Plaintiffs allege only vaguely that "the Defendants" are responsible for the alleged "Rubber Stamp" procedure they seek to challenge. Those allegations cannot hold Shelby County responsible for the alleged actions of its employees. What is more, they make no allegation that Defendant Bonner in his capacity as Sheriff violated Plaintiffs' rights. Plaintiffs

---

[6] Plaintiffs also sued Shelby County itself.

therefore fail to state a claim against Shelby County or against Defendant Bonner in his official capacity.

## III. Plaintiffs Cannot Challenge the Validity of Their Indictments Here

Plaintiffs allege that the Defendants' use of the "Rubber Stamp" procedure to indict them in state court without probable cause violates their rights. But the law does not permit Plaintiffs to challenge the validity of the indictment in their state criminal actions by suing under § 1983. *See Heck v. Humphrey*, 512 U.S. 477, 481 (1994) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 488–90 (1973)) ("[H]abeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement . . . even though such a claim may come within the literal terms of § 1983.") If there are problems with the state criminal conviction or the indictment, Plaintiffs' claims are more appropriate for habeas relief, not § 1983.

And so if Plaintiffs seek a reprieve from concluded state-court prosecutions, they cannot bring those claims under § 1983. A prisoner may not raise claims in a civil rights action if a judgment on the merits of those claims would affect the validity of his conviction or sentence, unless the conviction or sentence has been set aside. *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997); *Heck*, 512 U.S. at 486.

The holdings in *Heck*, *Balisok*, *Preiser*, and other cases, "taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005). Plaintiffs' claims about the "Rubber Stamp" procedure challenge the validity of their state court criminal proceedings. If they were to prevail on those claims, their victory

13

would question Plaintiffs' convictions, sentences, or continued confinement. *Heck* therefore bars the complaint here.

For all the above reasons, Plaintiffs' complaint fails to state a claim for relief and is dismissed.

## **AMENDMENT UNDER THE PLRA**

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a sua sponte dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). But courts need not grant leave to amend where an amendment cannot cure the deficiency. *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every sua sponte dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that . . . amending the complaint would be futile, then a sua sponte dismissal may stand."); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). Because, as noted above, Plaintiffs' complaint centers on what they describe as unlawful state court prosecutions which they can attack in the state criminal court process or through habeas relief, they cannot cure the deficiencies in the complaint, this Court holds that leave to amend is not warranted here.

## APPELLATE ISSUES

Under 28 U.S.C. § 1915(a)(3), the Court also has to consider whether an appeal by Plaintiff here would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the Defendants but has sufficient merit to support an appeal in forma pauperis. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith. This Court therefore **CERTIFIES**, under 28 U.S.C. § 1915(a)(3), that any appeal by Plaintiffs would not be taken in good faith.

The Court also addresses the assessment of the $505 appellate filing fee if Plaintiff still appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to benefit from the installment procedures in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610–11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain*, 716 F.3d at 951. *McGore* sets out specific procedures for implementing the PLRA, §§ 1915(a)–(b). The Court therefore instructs Plaintiffs that, if they wish to benefit from the installment procedures for paying the appellate filing fee, they must comply with the procedures set out in the PLRA and *McGore* by filing an updated in forma pauperis affidavit and a current, certified copy of their inmate trust accounts for the six months immediately preceding the filing of the notice of appeal.[7]

---

[7] Plaintiff Gary has received three strikes under 28 U.S.C. § 1915(g) from the dismissal of his previous cases as frivolous or for failure to state a claim. *See Gary v. Golder*, No. 2:18-cv-02685-TLP-tmp (W.D. Tenn. Oct. 30, 2019) (citing previous cases, assessing third strike, and notifying Plaintiff of filing restrictions). Because this lawsuit was filed before those strikes were

## **CONCLUSION**

In conclusion, the Court **DISMISSES** Plaintiffs Spates, Weatherspoon, Hiler, and Richards from this action as parties here. Plaintiff Gary's request for class certification is **DENIED**. The Court **DISMISSES** the complaint for failure to state a claim on which relief can be granted and for seeking relief from a Defendant immune from that relief, under 28 U.S.C. §§ 1915(e)(2)(B)(ii)–(iii) and 1915A(b)(1)–(2). And the Court **DENIES** leave to amend. The Court also **CERTIFIES** that any appeal here would not be taken in good faith. Because all of the federal claims are being dismissed, the Court **DECLINES** to exercise supplemental jurisdiction over any claims arising under state law. Those state law claims are **DISMISSED** without prejudice under 28 U.S.C. § 1367(c)(3). And because the Court is dismissing the complaint, Plaintiffs' request for appointment of counsel is **DENIED** as moot.

**SO ORDERED,** this 3rd day of February 2020.

s/ Thomas L. Parker  
THOMAS L. PARKER  
UNITED STATES DISTRICT JUDGE

---

assessed, his complaint is not barred from review. Plaintiff Gary is reminded that any new complaints filed while he is in custody must show that he is in imminent danger of serious physical injury. *See id.*